THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK SCACCIA, Appellant.

Fourth Department, January 21, 1977

*Lawrence M. Pidgeon* for appellant.

*Eugene F. Sullivan, Jr., District Attorney (John Elliott* of counsel), for respondent.

*Per Curiam.* On this appeal from a judgment of conviction for two counts of promoting gambling in the second degree, defendant Frank Scaccia contends, *inter alia,* that he was denied his constitutional and statutory rights to a speedy trial and that the two wiretap orders were not issued or conducted in accordance with CPL article 700 and, therefore, all evidence derived therefrom should have been suppressed.

Defendant was arrested on February 5, 1975 and arraigned the same day at County Court. An accusatory instrument was filed against him charging the defendant with two counts of promoting gambling in the first degree (Penal Law, § 225.10). No preliminary hearing was held as the matters were to be presented to the Grand Jury. In July, 1975 an indictment was filed charging defendant with two counts of promoting gambling in the first degree allegedly committed on December 27 and 28, 1974 respectively. On July 29, 1975 the defendant was arraigned on the indictment and pleaded not guilty. On August 28, 1975, more than six months after the date of his arrest, defendant moved in County Court for an order dismissing the accusatory instruments and the indictment on the ground that he had been denied his constitutional and statutory right (CPL 30.30) to a speedy trial. The County Court Judge denied the motion to dismiss finding that the Oswego County Court Calendar provides for a Trial Term commencing October 6, 1975 and that the nearest previous County Court Trial Term had convened on June 2, 1975. Further, the District Attorney stated that he would be ready for trial when the Trial Term convened on October 6, 1975.

We agree that the District Attorney's failure to commence the trial was not a reason or cause for the delay, but that the immediate reason for the delay was due to the lack of a scheduled Trial Term at which the District Attorney could move for trial of the indictment against this defendant *(People*

*ex rel. Franklin v Warden, Brooklyn House of Detention for Men,* 31 NY2d 498). While the shortage of trial facilities is not a categorically complete answer to the need for prompt trial, it does constitute "good cause" for delay *(People v Ganci,* 27 NY2d 418). "[A] delay occasioned by inadequate facilities or personnel *weighs less heavily* against the State—because it furnishes a more neutral reason—than one wholly subject to the prosecutor's control (see, e.g., *Barker v Wingo,* 407 US 514, 531)" *(People v Johnson,* 38 NY2d 271, 279). We, therefore, find that the absence of a trial term following the indictment constitutes an exceptional circumstance tolling the six months' period provided for in CPL 30.30. Further, balancing the factors set forth in *People v Taranovich* (37 NY2d 442, 445), we find that defendant has not been denied his constitutional right to a speedy trial.

Appellant's contention that the wiretap orders were improperly issued inasmuch as the requirement of CPL 700.15 (subd 4) that eavesdropping warrant may issue only "[u]pon a showing that normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous to employ" has not been met is without merit. The affidavits submitted to the issuing Judge clearly showed that at least two prior unsuccessful attempts using normal investigative procedures were made. It is further claimed that due to the nature of the operation and police consciousness on the part of the participants, infiltration and surveillance were difficult and employing normal investigative procedures would tend to jeopardize the investigation and detection of the commission of future crimes.

Defendant further contends that the wiretaps were not conducted in the manner required by the statute. CPL 700.50 (subd 2) provides: "Immediately upon the expiration of the period of an eavesdropping warrant, the recordings of communications made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions". Here the "Colloca" 30-day wiretap commenced on December 11, 1974, the wiretap was terminated on December 30, 1974, but the tapes were not sealed until January 17, 1975. The "Spano" 30-day wiretap commenced December 27, 1974, the tapes were de-activated on January 16, 1975 and the tapes were not sealed until January 31, 1975. In both warrants the issuing Judge granted a 30-day order and directed that within 14 days after the termination thereof a return be

made to him in accordance with CPL 700.50 (subds 1, 2). Although the tapes were presented within the time authorized by the issuing Judge's order, such presentation is not in accord with the intent of the statute.

While "immediately" has been held not to mean "instantaneously", it does mean "promptly, within a reasonable time, or with reasonable diligence, dependent upon the circumstances in each case" *(People v Blanda, 80 Misc 2d 79, 83)*. In the instant case there is no reasonable explanation concerning the tardy delivery and sealing other than that it was in accordance with the issuing Judge's order. There is no reasonable basis to be found in the statute which permits the police to keep the recordings for 14 days after the expiration of the wiretap order before making them available to the issuing Judge for sealing. In two recent cases the Court of Appeals has emphasized the necessity of sealing. In *People v Nicoletti* (34 NY2d 249) it held that in the absence of sealing, even with the concurrence of the issuing Judge, it was reversible error to admit the tapes into evidence. The court (p 253) stated that "the sealing requirement is to be strictly construed and it is not the defendant's burden to come forward with the evidence of tampering when unsealed recordings are sought to be introduced into evidence". The court found that the first concern of the sealing requirement is to prevent tampering, alterations or editing. It was aware that the recordings were needed for transcription and analysis, "[b]ut for these purposes duplicate recordings could and should have been made and the originals preserved under seal" (p 253). In *People v Sher* (38 NY2d 600) the court adhered to the rule announced in *Nicoletti* and held that the failure of the prosecution to obtain judicial approval and supervision of the unsealing of tapes violated the procedure mandated by CPL article 700.

In the case before us the question is not whether the tapes were sealed *(Nicoletti),* nor whether they were opened after previously being sealed *(Sher)* but, rather, whether the failure to immediately make the tapes available to the issuing Justice and sealed under his direction mandates that the evidence obtained as a result of the wiretap be suppressed. Here there was great opportunity for tampering. Not only did the investigators maintain the tapes in an unsealed condition for an extended period, but during this period the tapes were re-transcribed, listened to again, re-evaluated and analyzed on a daily basis without the use of a duplicate tape. Even though there is

no indication that the tape recordings were altered, nonetheless, "[i]t is the potential for such abuse to which we address ourselves" *(Nicoletti,* p 253; *Sher,* p 604). Duplicate tapes could and should have been made and the originals presented to the issuing Judge and immediately sealed *(Nicoletti,* p 253, *Sher,* p 605).

In view of the statement by the Court of Appeals concerning: (1) strict adherence to the statutory requirements set forth in CPL article 700; (2) the opportunity the police had and should have employed to make duplicate tapes for their own purposes so as to leave inviolate the "master" tape to be produced in court; and (3) the policies which underlie CPL article 700, i.e., to prevent tampering, alteration or editing, establish a chain of custody and to protect confidentiality of the tapes, we hold that the excuse offered by the District Attorney did not provide a satisfactory explanation for the late seal (cf. *People v Poeta,* 455 F2d 117). For these reasons the evidence derived from the tapes should be suppressed.

The judgment of conviction should be reversed and the motion to suppress evidence derived from the wiretap orders should be granted and a new trial should be held.

MOULE, J. P., CARDAMONE, SIMONS, DILLON and WITMER, JJ. concur.

Judgment unanimously reversed, on the law, and a new trial granted.