Jasen, J.
Over objection, recorded telephone conversations intercepted pursuant to an eavesdropping warrant, were introduced into evidence at defendants’ joint trial for conspiracy (Penal Law, § 105.00) and promoting gambling (Penal Law, § 225.05). On these appeals from orders of the Appellate Division affirming their convictions, the determinative issue is whether the absence of seals on the recordings was sufficiently explained to justify their admission into evidence.
We reverse and hold, as a matter of law, that the absence of seals was insufficiently explained and that the recordings were improperly admitted into evidence.
The facts may be briefly stated. Police surveillance of the Ivanhoe Inn on Buffalo Avenue in Niagara Falls, New York, revealed that it was frequented by known gamblers. Police informants reported that gambling operations were being conducted there. Based on this information, an eavesdropping warrant was secured to tap a telephone in a room at the inn believed to be used in the gambling operation. Eavesdropping *252 commenced March 12, 1970 and terminated on March 30, 1970. Numerous incriminating conversations were intercepted, the. defendants were arrested, and these indictments ensued.
The tape recordings of the intercepted conversations were kept in a locked footlocker in the home of Detective Nafus of the Niagara Falls Police Department until about May 8,1970, when they were delivered, in the locked footlocker, to the District Attorney at the Niagara County Court House. Aside frbm Nafus and the District Attorney, one other police officer had the combination to the locker containing the tape recordings; Nafus, along with other officers and the District Attorney, reviewed the tapes at his home. Transcriptions were made and portions of some tapes were re-recorded to produce two composite tape recordings. Duplicates of certain of the tapes were also made. The Justice who issued the eavesdropping warrant apparently was advised of the storage arrangements for the tape recordings by the District Attorney, but they were never presented to him for sealing and none of them were, in fact, ever sealed.
Subdivision 2 of section 822 of the former Code of Criminal Procedure, in effect at the time of the eavesdropping, provided that immediately upon expiration of the warrant, "recordings of communications ‘ ‘ shall be made available to the issuing justice and sealed under his directions.” Subdivision 3 of section 825 makes the presence of a seal, or a satisfactory explanation for its absence, a prerequisite for the use or disclosure of the contents of any intercepted communication or evidence derived therefrom. Federal law contains similar provisions (U. S. Code, tit. 18, § 2518, subd. [8], par. [a]), as does the present Criminal Procedure Law (700.50, subd. 2; 700.65, subd. 3).
It is conceded that the tape recordings were not sealed. By way of explanation, the People urge that there was substantial compliance with the law; that the issuing Justice was appraised of the storage arrangements; and that the tapes were needed for transcription and analysis, a task said to be particularly lengthy and arduous in a conspiracy and gambling investigation. It is also urged that a secure storage facility was lacking and that, at any rate, there is no evidence and, for that matter, no allegation, that the tape recordings were altered or doctored in any way.
*253 We cannot accept these arguments in justification. The sealing requirement is to be strictly construed and it is not the defendant’s burden to come forward with evidence of tampering when unsealed recordings are sought to be introduced into evidence. The purpose of the requirement is at least threefold: to prevent tampering, alterations or editing; to aid in establishing the chain of custody; and to protect the confidentiality of the tapes. (See United States v. Poeta, 455 F. 2d 117, 122, cert. den. 406 U. S. 948; United States v. Kohne, 358 F. Supp. 1053, 1058, affd. 485 F. 2d 682; see, also, American Bar Assn., Project on Minimum Standards for Criminal Justice; Standards Relating to Electronic Surveillance, Final Draft [1971], § 2.3, subd. [b]; §§ 4.2, 5.13, 5.14 and Commentary.) Of these, the first is perhaps of greatest concern. Tape-recorded conversations lend themselves to ‘ ‘ diabolical fakery ’ ’. (Lopez v. United States, 373 U. S. 427, 468-469 [Brennan, J., dissenting]; see, also, Dash, Schwartz and Knowlton, The Eavesdroppers [1959], at p. 368.) Through skillful editorial manipulation, alterations may be undetectable, or, if detectable at all, then only by the most sophisticated devices and techniques involving time-consuming and expensive analysis by technical experts. While not foolproof, sealing reduces the risk of such manipulation to tolerable limits.
Measured against the potential for abuse, the explanations offered in this case are patently insufficient.* While the parties charged with custody of the tape recordings were cognizant of the sealing requirement, they did not present them to the issuing Justice for sealing as was their duty. That the issuing Justice was advised of the custody arrangements will not suffice; While he may have tacitly approved them, the fact remains that the recordings were not sealed. We have no quarrel with the contention that the recordings were needed for transcription and analysis and that in a conspiracy and gambling investigation this is a particularly arduous task. But for these purposes duplicate recordings could and should have been made and the originals preserved under seal. (Code Crim. Pro., § 823, subd. 2; *254 see, also, U. S. Code, tit. 18, § 2518, subd. [8], par. [a]; CPL 700.55, subd. 2.) Particularly where, as here, the recordings must be played and re-recorded many times for the purposes of transcription and preparation of composite recordings, there is the possibility for human or mechanical error, the erasure of portions of the tapes and the destruction of evidence. Questions of potential tampering aside, prudence alone dictates that such tasks be done with duplicate not original recordings. As to claimed lack of a secure storage location, again this goes to custody and does not answer the sealing question.
Inasmuch as the sealing issue is dispositive of these appeals, further comment on appellants’ other points is unnecessary.
For the reasons stated, the orders of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Rabin and Stevens concur.
Orders reversed, etc.

 There is, of course, no indication whatever that the tape recordings herein were altered in any way and we intimate no such view. It is the potential for such abuse to which we address ourselves.