OPINION OF THE COURT
Chief Judge Wachtler.
This appeal presents the issue of the degree to which the mandates of Criminal Procedure Law article 700 must be followed in the conduct of a wiretap investigation and the consequences that follow if the required standards are not met. We find, as did the Appellate Division, that the degree of compliance in this case was inadequate and that suppression was the proper remedy. Accordingly, we affirm.
In connection with an investigation into sales of heroin at a meat market where defendant worked, the People obtained authorizations for nine wiretaps; Our only concern on this appeal is with wiretaps numbered three through six.
A warrant authorized wiretap three on two telephones at the meat market from July 13, 1981 to August 11, 1981. On August 10,1981, the District Attorney applied for an extension of wiretap three, and a warrant issued authorizing wiretap four from August 11,1981 to midnight of September 9,1981. At the conclusion of wiretap four, the eavesdropping equipment was ordered turned off and no further conversations were intercepted. However, the equipment was left in place in anticipation of a renewal of wiretapping authority, and no equipment or splices into telephone lines were removed. The tapes obtained during wiretap four were sealed on September 11, 1981. On September 15, 1981, the Dis *55 trict Attorney obtained a warrant to wiretap five, which expired on October 14,1981.
On October 13,1981, before the warrant authorizing wiretap five expired, a warrant authorizing wiretap six until midnight, November 11,1981 was obtained. The tapes wiretap six produced were sealed on November 13,1981.
At the suppression hearing, the People attributed the delays in sealing the tapes resulting from wiretaps four and six, each of which terminated on midnight of a Wednesday, but were not sealed until late in the afternoon of the following Friday, to difficulty in retrieving the tapes from the Special Narcotics Prosecutor’s office, where they were taken from the plant for inventory, copying and custody, and, in the case of wiretap four, to the unavailability of the issuing justice.
The delay in obtaining an extension of wiretap four from the expiration of the warrant on September 9 to September 15,1981 was attributed to delays in transcription and obtaining translation of several of the conversations, which were in a Sicilian dialect. In addition, the People asserted that two business days’ delay was attributable to "mechanical problems,” which, upon cross-examination, turned out to be the failure of a single typewriter made available to the District Attorney’s office by the wife of one of the detectives assigned to the investigation. However, it was conceded that there were, during that time, at least 100 functioning typewriters in the District Attorney’s office, and at least that many typists who were capable of typing the renewal application.
After Criminal Term denied defendant’s motion to suppress, he was convicted, upon a jury verdict, of criminal sale of a controlled substance in the first and second degrees, and sentence was imposed. On appeal from the judgment of conviction, which brought up for review the denial of defendant’s motion to suppress the wiretap evidence, the Appellate Division reversed, on the law, granted the motion to suppress any evidence obtained from wiretaps two and five "and any subsequent extension thereof’ and ordered a new trial. The People have appealed by leave of a Judge of this court.
I.
The People’s first contention is that CPL 700.40[1] does not prohibit the issuance of an order extending a wiretap after the origi *56 nal wiretap order has expired. Characterizing the application for an extension order of wiretap four as "mislabelled,” and asserting that the statutory requirements for both an original and an extension application had been met, the People argue that "[t]o attach crucial significance to the caption exalts form over substance in a manner that has no conceivable purpose.”
We reject this contention for several reasons. The clear language of the applicable statute requires that an application for an order of extension, if one is desired, be made "prior to the expiration of a eavesdropping warrant,” a requirement that should be strictly construed (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 700.40, p 502). Focusing on the subsequent statutory language providing that "the applicant may apply * * * for an order of extension” misses the mark. The permissive language clearly refers to the decision whether to request an extension at all; if an extension is desired, it must be sought before the original warrant expires. A contrary interpretation would render the timeliness requirement a nullity, in violation of accepted canons of statutory construction (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 231).
That the parallel provision of the Federal wiretapping statute (18 USC § 2518 [5])[2] does not require the making of an extension application before the expiration of the original warrant makes no difference, in light of the clear mandate of our own statute. Although our own wiretapping statute is patterned largely upon the Federal statute, any variances between the two. must be regarded as purposeful (People v Washington, 46 NY2d 116, 122).
We need not decide whether, as the People contend, any "exigent circumstances” exception should be engrafted upon the requirement that an application for an extension warrant be made before the expiration of the original warrant. Upon the record *57 before us, it is clear that no such exigency existed. The breakdown of a single typewriter, when at least 100 others, with the necessary personnel, were available, does not constitute an exigency. Even if the difficulties in translating the intercepted communications could constitute an exigency where the untranslated conversations comprise the only evidentiary basis for obtaining the extension, the People do not here contend they had insufficient evidence without those conversations.
Finally, we reject the People’s assertion that the extension application here is the functional equivalent of a new original application. The People are well aware, or should be, that notice must be given to the target of a wiretap at most 90 days after the expiration of the warrant or any extension thereof (CPL 700.50 [3]).[3] Obviously, then, where a gap in surveillance and then a second wiretap follow an original wiretap, two notices must be given, which was not done in this case. To sustain the People’s contention that the application for a warrant for wiretap five was a new original application while allowing them to circumvent the notice requirement would defeat the statutory scheme in this sensitive area where statutory requirements must be strictly construed (People v Washington, supra).
II.
We also find that the inactivation requirement was not met here, where the eavesdropping devices were merely turned off. The danger of inadequate inactivation is, of course, that an unauthorized eavesdropping will result. While it is true, as the People contend, that no inactivation short of removal (the alternative under the statute)[4] is truly permanent, we regard the permanent inactivation alternative as being met only upon a showing that steps were taken which would cut off the possibility of listening in on communications to or from the tapped premises. Here, the ef *58 feet of simply turning off the equipment could obviously and easily be reversed by anyone who had access to the plant. That no unauthorized eavesdropping may have occurred is beside the point, because it is the potential for abuse that is the focus of analysis (cf. People v Nicoletti, 34 NY2d 249, 253, n).
III.
The People contend the evidence obtained by wiretap six should not have been suppressed[5] because the application for it was not based on the violations of the extension and inactivation provisions of the statutes which preceded the granting of authorization for wiretap five. In other words, the People assert, "it is inappropriate to suppress evidence lawfully seized simply because the police have blundered in a way wholly unrelated to the seizure of that evidence.” The flaw in this contention is that it assumes the admitted blunders occurring in between wiretaps four and five were unrelated to the subsequent issuance of a warrant for wiretap six.
The Federal statutes provide that wiretap evidence may not be received in evidence in any trial, State or Federal, "if the disclosure of that information would be in violation of this chapter” (18 USC § 2515), and that a motion for suppression may be made by any aggrieved person on the ground that "the communication was unlawfully intercepted” (18 USC § 2518 [10] [a] [i]). A communication is unlawfully intercepted when there is a " 'failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device’ ” (United States v Donovan, 429 US 413, 433-434, quoting United States v Giordano, 416 US 505, 527). It cannot be gainsaid that the extension and inactivation requirements reflect and implement a policy of circumscribing the use of eavesdropping devices. Nor can the People claim that the warrant authorizing wiretap six did not depend on information obtained from wiretap five, especially when it is conceded that the results of wiretap five were incorporated into the application for a warrant authorizing wiretap six *59 (see, United States v Cirillo, 499 F2d 872, 878, n 3, cert denied 419 US 1056; Fishman, Wiretapping and Eavesdropping § 184).
The People’s reliance on People v Arnau (58 NY2d 27, cert denied — US —, 104 S Ct 3585) and similar cases for the proposition that illegal police activity requires suppression only of evidence obtained as a result of that illegal activity is misplaced. As indicated above, wiretap six was a direct product of wiretap five, which in turn was the result of a direct violation of the extension application and inactivation statutes. More importantly, however, and independently of the fruit of the poisonous tree doctrine, suppression is warranted here, as in many other cases involving violations of the eavesdropping statutes, because of the potential for abuse (see, e.g., People v Basilicato, 64 NY2d 103; People v Washington, 46 NY2d 116, supra; People v Sher, 38 NY2d 600).
Admission of the evidence obtained from wiretap six was not harmless, whether the error is considered constitutional or not (cf. People v Brenes, 42 NY2d 41, 49). That evidence was of the only transaction in which the undercover officer dealt directly with defendant and discussed the purchase of drugs without the inter-mediation of an informant, through whom the undercover officer had made all previous purchases. It was that critical evidence which destroyed defendant’s agency defense.
IV.
Defendant also claims, as an alternative ground for affirmance (see, CPL 470.35 [2] [b]), that the sealing requirements of CPL 700.50 (2)[6] were not met in this case. We have consistently held that the sealing requirement must be strictly construed to effectuate its purposes of preventing tampering, alterations or editing, aiding in establishing a chain of custody and protecting the confidentiality of the tapes (People v Basilicato, 64 NY2d 103, 116, supra; People v Nicoletti, 34 NY2d 249, 253, supra). Although we have held that a one-day delay in sealing may be excused, even absent an explanation (People v Edelstein, 54 NY2d 306, 310, rearg denied 55 NY2d 878), any additional delay, if not satisfactorily explained, requires suppression (People v Basilicato, 64 NY2d 103, 116, supra). Moreover, a defendant is not required to prove that the tapes were tampered with; because of the potential for *60 abuse, it is the People who must provide a satisfactory explanation for untimely sealing (People v Basilicato, 64 NY2d 103, 116, supra).
Here, almost two full business days passed before the tapes resulting from wiretaps four and six were sealed. Inadequate police procedures, apparently responsible for the delay, do not constitute a valid excuse (People v Washington, 46 NY2d 116, 124-125, supra). Nor does the unavailability of the issuing justice constitute a valid excuse for the failure to timely seal the tapes produced by wiretap four in a county where several other justices are present each business day. Accordingly, we hold the People’s failure to comply with the sealing requirement, in addition to their failure to timely apply for a warrant extending wiretap four and to permanently inactivate the eavesdropping equipment during the lapse in wiretapping authority, all require affirmance of so much of the order as was appealed from.
Judges Jasen, Meyer, Simons, Kaye and Alexander concur; Judge Titone taking no part.
Order affirmed.

. CPL 700.40 provides: "At any time prior to the expiration of an eavesdropping warrant, the applicant may apply to the issuing justice, or, if he is unavail *56 able, to another justice, for an order of extension. The period of extension shall be no longer than the justice deems necessary to achieve the purposes for which it was granted and in no event longer than thirty days. The application for an order of extension must conform in all respects to the provisions of section 700.20 and, in addition, must contain a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results. The provisions of sections 700.15 and 700.25 are applicable in the determination of such application. The order of extension must conform in all respects to the provisions of section 700.30. In the execution of such order of extension the provisions of section 700.35 are applicable.”

. 18 USC § 2518 (5) provides in pertinent part: "Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section.”

. CPL 700.50 (3) provides in pertinent part: "Within a reasonable time, but in no case later than ninety days after termination of an eavesdropping warrant, or expiration of an extension order * * * written notice of the fact and date of the issuance of the eavesdropping warrant, and of the period of authorized eavesdropping, and of the fact that during such period communications were or were not intercepted, must be personally served upon the person named in the warrant and such other parties to the intercepted communications as the justice may determine in his discretion is in the interest of justice.”

. The pertinent statutory provision is CPL 700.35 (2), which states: "Upon termination of the authorization in the warrant, eavesdropping must cease and any device installed for such purpose must be removed or permanently inactivated as soon as practicable. Entry upon a private place or premise for the removal or permanent inactivation of such device'is deemed to be authorized by the warrant.”

. The People, by their brief, have limited their appeal to the ruling suppressing evidence obtained through wiretap six, though the Appellate Division also suppressed evidence obtained through wiretap two, none of which appears to have been introduced at the trial. We do not consider defendant’s arguments in support of his contention that the evidence obtained from wiretap three should also be suppressed, because the Appellate Division order of reversal was not adverse to defendant and thus, he could not be granted leave to cross appeal (CPL 450.90 [1]).

. CPL 700.50 (2) provides: "Immediately upon the expiration of the period of an eavesdropping warrant, the recordings of communications made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions.”